Burton *v.* Pacific Mutual Life Insurance Company, Appellant.

Argued October 1, 1951. Before DREW, C. J., STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Sanford M. Chilcote,* with him *Dickie, McCamey, Chilcote, Reif & Robinson,* for appellant.

*Jason Richardson,* with him *William J. Graham,* for appellee.

614

On March 15, 1948, Frederick R. Burton made application with the Pacific Mutual Life Insurance Company for a life insurance policy in the sum of $3750. The policy was issued on March 18, 1948 and on August 21, 1948, Burton died. His wife, the beneficiary under the policy, thereafter brought this suit in assumpsit against the Insurance Company to recover on the contract. Defendant filed an answer denying liability on the ground that Burton had made fraudulent misrepresentations in his application. The case went to trial on the issue thus framed and the jury returned a verdict for plaintiff. After denying defendant's motions for judgment n.o.v. and new trial, the learned court below entered judgment on the verdict and this appeal followed.

The case history of Burton's last illness may be briefly stated as follows: On January 9, 1947, Burton was operated on for the removal of tonsils and adenoids. During the course of the operation the surgeon in charge, a Dr. Boaz, noticed a growth at the base of the tongue which laboratory reports later showed to be cancerous. Dr. Boaz recommended a series of X-ray treatments which were given by one Dr. Grier until October 17, 1947, when they were abandoned. On May 3, 1948, he was taken to the hospital following a hemorrhage of the throat and died there August 21, 1948, the cause of death being officially recorded as cancer of the throat.

In answering the questions contained in the application for insurance on March 15, 1948, Burton stated that he was in good health, that he had never been treated for spitting blood, and that in the past five years the only physicians he had consulted had been in reference to the tonsilectomy. It is on the basis of

those answers that defendant resists payment. It is defendant's contention that those answers were false representations made to induce the issuance of the policy and that as a consequence its only liability is to return the premiums which Burton paid.

Plaintiff made out a prima facie case when she proved the contract of insurance with defendant and that all premiums were paid up until the date of death. In order to avoid the policy the burden then shifted to defendant to prove that the representations were false and that Burton knew they were false when he made them or otherwise acted in bad faith in making them: *Evans v. Penn Mutual L. Ins. Co.*, 322 Pa. 547, 560, 186 A. 133. Where there is a conflict in the evidence either as to the falsity of the representations or as to the knowledge or bad faith of the insured the case must be submitted to the jury: *Adams v. Metropolitan L. Ins. Co.*, 322 Pa. 564, 186 A. 144. An examination of the record in this case makes it clear that the issues were properly submitted to the jury.

The evidence discloses beyond any doubt that Burton was suffering from an incurable cancer of the throat at the time he applied to defendant for insurance. Obviously, he was not in good health at that time and he was being treated for more than defective tonsils. However, there is absolutely no evidence that he knew his answers to those questions were false. Defendant seeks to have us infer knowledge from the long course of treatment and the medical records. This we cannot do under the facts here presented.

It is true that the failure to report every attendance or treatment by a physician does not alone constitute fraud, as for instance where the application does not disclose attendance for headaches, grippe, acute colds, indigestion, or other comparatively minor illnesses: *Adams v. Metropolitan L. Ins. Co.*, supra. Thus, where

a person who has been treated over a period of time for a heart condition and fails to report it dies of coronary occlusion or coronary thrombosis, his beneficiary may not recover: *Freedman v. Mut. Life Ins. Co. of N. Y.,* 342 Pa. 404, 21 A. 2d 81; *Derr v. Mut. Life Ins. Co.,* 351 Pa. 554, 41 A. 2d 542. Such is not the case here, however. The three doctors who treated Burton all testified for defendant and stated that they had never told him he was suffering from cancer and that to the best of their knowledge and in their considered opinions he did not know he had cancer. Dr. Boaz told him only that he had a growth in his throat but gave no indication that it was malignant. Plaintiff testified that Burton complained only of a rawness in his throat and that he thought the doctors had failed to remove all of his tonsils. All of the witnesses testified that he was cheerful and always planning for the future. That this is true is evidenced by the fact that the insurance policy involved in this suit contains a retirement plan which would have matured at age 65, seventeen years after the date of his death. At the time he applied for the policy Burton was attending his work regularly as an assistant superintendent for Booth & Flinn Co. in Pittsburgh, working from early morning until late at night on numerous occasions.

From this evidence the jury could well have inferred, and in view of its verdict unquestionably did, that Burton had no realization that anything was seriously wrong with him, and that he supposed the treatments he underwent were the mere aftermath of the tonsil and adenoid operation which he reported in his application. It is true that Dr. Boaz testified he told Burton he had a growth. It is likewise true that a growth may be and in this case was a serious condition. However, in considering this motion for judgment n.o.v. we cannot assume he accepted Dr. Boaz's statement in view of

plaintiff's testimony that Burton thought his troubles stemmed from improper removal of his tonsils.

Likewise the question of whether Burton had ever been treated for spitting blood was properly left to the jury. Dr. Boaz stated that he had, but plaintiff stated that she had never heard him say anything to that effect, had never seen him spit blood, and that, although she did all of his laundry she had never seen blood on his handkerchiefs. Conflicts in testimony of this nature are always for the fact finding tribunal. That being true, defendant's motion for judgment n.o.v. was properly denied.

Defendant has also urged that a new trial be granted and set forth a series of alleged errors in the charge and in the refusal of the court below to admit certain evidence. We have examined them all and have found no merit in any of them. Dr. Boaz attempted to testify concerning a telephone call he received from a woman purporting to be plaintiff. Upon his stating that he did not recognize her voice and objection being made he was not allowed to relate the conversation. This ruling was correct. It is now well settled that the recipient of a telephone call may not testify as to the conversation unless the voice of the caller can be identified: *Smithers v. Light,* 305 Pa. 141, 157 A. 489. The other grounds upon which defendant seeks a new trial need not be discussed seriatim. It is sufficient to say that the trial judge's rulings were correct and his charge accurate and complete. There being no error, judgment was properly entered on the verdict.

Judgment affirmed.