Nyce, Appellant, v. Muffley.

Argued November 16, 1955. Before STERN, C. J., STEARNE, BELL, MUSMANNO and ARNOLD, JJ.

*W. F. Steigerwalt,* with him *John F. Stine, Jr.,* for appellants.

*William S. Hudders,* with him *Randall Snyder* and *Butz, Hudders, Tallman & Rupp,* for appellee.

OPINION BY MR. JUSTICE BELL, January 12, 1956:

Plaintiff at 7:30 p.m. on the evening of January 19, 1951, was crossing 7th Street in Allentown at or near the intersection of 7th and Cedar Streets. Seventh Street is 50 feet wide from curb to curb; two cars were parked on 7th Street. She testified that she stood on the corner and waited for three or four automobiles, which came from her right, to pass; she then looked to the left and saw nothing; she was able to see a far distance; she took six or seven steps into 7th Street and then saw for the first time defendant's automobile which came from her left and was "about an arm's length away", without lights. While taking the six or seven steps in the street she was looking in the direction from which defendant's car came and there was nothing to block out her vision. Some part of the automobile struck her; she was severely injured and does not remember anything else about the collision except that the car stopped about 15 feet away from her.

According to plaintiff's daughter and another witness, she was picked up about 30-40 feet south of the intersection. According to defendant and two witnesses she was picked up about 55-60 feet from the intersection where she was found sitting in the street at defendant's rear fender. The testimony showed that the intersection was well lighted on the night in question

by virtue of a street light at the intersection, a lighted gasoline station on one corner and the lights from a grocery store on another corner.

Defendant testified he was traveling about 10 to 15 miles an hour; that his headlights were lit; that he saw no one at the intersection but that an impact occurred with his car about 60 feet beyond the intersection of the two streets.

The jury brought in a verdict for defendant. Plaintiff filed 12 reasons for a new trial. The Court dismissed plaintiff's motion for a new trial and said, inter alia: "We can say without hesitation that it [the verdict] was amply supported by credible testimony."

Plaintiff first alleges that the Court erred in refusing to permit plaintiff's surgeon, Dr. Bachman, who first saw her on February 1, 1951, and operated on her for a hernia the next day, to testify on re-direct examination, what plaintiff had told him as to the cause of the hernia. Dr. Bachman was called out of turn and before there was any evidence of the accident or of negligence or the injuries allegedly suffered therefrom. Dr. Bachman on cross examination testified he did not know when and how the incisional hernia occurred nor did he know whether or not the hernia was due to the accident. Plaintiff on re-direct examination sought to have the doctor testify that plaintiff told him the hernia first appeared after the accident. Defendant's objection was sustained. Plaintiff subsequently testified that the hernia came on immediately after she arrived at the hospital, and her family physician, although he made no notation of the incisional hernia on Mrs. Nyce's chart, testified that in his opinion the incisional hernia was caused by the accident. In view of the verdict for defendant, we need only say that if this was error it was certainly harmless error since it went only to the question of damages.

Plaintiff contends that the Court erred by admitting photographs of the 7th and Cedar Streets intersection when they were taken two years after the accident and in the daytime. The Court admitted the photographs with this clear and specific limitation: "The exhibits will be received solely for the purpose of showing the permanent physical aspects at the intersection of 7th and Cedar and for no other purpose. The jury will understand that when these pictures get into your hands you will understand that they are here for the sole purpose of showing the permanent conditions at that corner. The streets seem to be wet in these pictures . . . and the evidence shows that that condition did not exist on January 19, 1951, and of course these pictures cannot show the visibility on January 19, 1951. They can show geometrically perhaps what could be seen, but not actually what was visible on account of the light at that particular time; for that limited purpose the exhibits will be received."

The admission of photographs is a matter largely within the discretion of the trial Judge. A photograph must be verified either by the testimony of the person who took it or by another person with sufficient knowledge to state that it fairly and accurately represents the object or place reproduced as it existed at the time of the accident, or if there is a difference or change, the difference or change is specifically pointed out and is readily capable of being clearly understood and appreciated by the jury: *Taylor v. Modena Borough,* 370 Pa. 100, 87 A. 2d 195; *Beardslee v. Columbia Township,* 188 Pa. 496, 41 A. 617.

The admission into evidence of photographs showing the location and scene of a crime for the limited purpose of showing the general location and the structures is a matter within the sound discretion of the trial Court even though the photographs were made

in the daytime and the crime was committed after dark: *Commonwealth v. Gidaro,* 363 Pa. 472, 70 A. 2d 359.

The admission of the photographs in the instant case for the limited purpose mentioned was not error.

Plaintiff seeks a new trial because after the trial had commenced it was discovered that one of the jurors was an uncle of defendant's counsel who at one time had performed legal services for him. The Court then asked plaintiff's counsel whether he wished a juror withdrawn. He replied he did not. A party will not be allowed to remain silent as to the possible disqualification of a juror which he knows about and gamble on a verdict, then, after he loses, be entitled to a new trial when he has failed or refused to ask for the withdrawal of a juror. Cf: *Reiner v. Augustinian College,* 250 Pa. 188, 95 A. 395.

The facts on which the next alleged error is based are shown by a stipulation of counsel as follows: ". . . 2. That if the said depositions were taken, the plaintiffs would call Elizabeth Arthur, forelady of the jury, who would testify that *after the jury had decided upon its verdict* * she communicated with the tipstaff in charge of the jury and asked for aid and assistance in connection *with the manner in which the verdict slips were to be filled out;* that the tipstaff thereupon called another tipstaff who came to the door of the jury room and told her how the verdict slips were to be filled out, whereupon they were so filled out and signed by the jurors; *that this advice, aid and assistance merely related to the manner in which the verdict slips were filled out, and in no way constituted aid, advice or assistance as to what the substance of the jury verdict should be,* they having already determined upon the same before calling the tipstaff."

---

* Italics ours.

We disapprove of such practice, but it is clear that no prejudice resulted to the plaintiff nor did it constitute reversible error. See *Hunsicker v. Waidelich,* 302 Pa. 224, 153 A. 335.

We find no merit in the other errors alleged by plaintiff and particularly no reversible error in the charge of the Court or its affirmance of defendant's points for charge.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I would grant a new trial in this case for reasons not discussed in the Majority Opinion. The principal dispute at the trial of this lawsuit was whether the plaintiff was struck by the defendant's car at a regular crossing (7th and Cedar Streets in Allentown) or at a point between crossings. Obviously a motorist is held to a higher degree of care and caution at an established intersection than he is at any place removed from the intersection. It was highly important, therefore, for the Trial Judge in his charge to leave to the jury the uninfluenced determination of the exact spot of the collision. Under no circumstances should he have accepted as a fact that the accident occurred beyond 7th and Cedar Streets. Thus, in my view of the case, it was distinct error for the Trial Court to affirm the defendant's ninth point for charge which read: "Muffley [defendant] was not bound to anticipate that Mrs. Nyce [plaintiff] would come out suddenly from between parked cars into the pathway of his car between crossings, and if the accident occurred in that fashion, your verdict should be for Muffley."

The record is barren of testimony that Mrs. Nyce came out suddenly or otherwise from "between parked

cars." In this desert of nullity, the Trial Judge dug an oasis of suggestion, and it cannot be excluded that the jury was influenced into believing what did not exist.

The jury returned a verdict for the defendant and in his opinion refusing the motion for a new trial filed by the plaintiff, the Trial Judge sought to justify his affirmance of the defendant's ninth point: "The statement of law is correct and was simplified by the context of the charge. The assumed facts were supported by competent evidence whose credibility was for the jury and we stressed that it applied only if the jury found that those elements were present in the case. The point does not state that there was testimony that she came out suddenly but the jury had the right to infer that she came out suddenly if they believed defendant who said he had not seen plaintiff in his pathway or known what he had hit."

The Judge speaks of "assumed facts," but one cannot assume what has no basis in reality. By assuming what was not testified to, the Judge planted in the jury's mind an idea which later could grow into an assumed "fact," and finally bear fruit in an unwarranted verdict. When the Judge said: "Muffley was not bound to anticipate that Mrs. Nyce would come out suddenly from between parked cars," what possible interpretation could the jury place on that statement other than that there *was* evidence that Mrs. Nyce came out from between parked cars?

It is a matter of demonstrable reality that persons untrained in the ways of psychological reaction can easily integrate an imagined fact into an accepted situation when the suggested fact is advanced by someone who speaks with authority. In the minds of the jurors the Judge's instruction could easily take tangible form within the frame of the general picture of the accident as they understood it, and, on the basis of

the Judge's authority, they would have no difficulty in visualizing Mrs. Nyce darting between the parked cars with the animation of Eliza crossing the ice.

Trial Judges should be extremely wary about drawing word pictures with crayons taken from the box of sheer speculation, or from the brief cases of one or the other of the battling attorneys. In this connection it might be well to recall that: " 'Charges relating to matter not in evidence, or as to which has been excluded, especially if they are as to fundamental facts, should not be given. A point, therefore, is properly refused which, though correctly stating the law, has no particular application to the evidence in the case. Instructions which assume facts contrary to the facts in evidence, are erroneous and should not be given. (6 Std. Pa. Practice, Section 23, Page 130, et seq.)' "

The Trial Judge in this case charged further: "Those are the duties of the parties toward each other, and your findings, whether Mr. Muffley was negligent, you cannot find a verdict against him unless you find that he was negligent. You cannot find a verdict in favor of Mrs. Nyce, and it amounts to the same thing, *unless you find that she was free of contributory negligence."* *

This instruction assumes that the plaintiff had an affirmative duty to prove that she was free of contributory negligence. Of course, that is not the law.

I trust I do not seem unduly critical of the able and conscientious Judge in the Court below. I know that an appellate court should not take a trial judge's charge and run it through a find-meshed sieve to catch every grain of sand of inappropriate expression and every particle of lint of incongruity. I am aware of that, but at the same time the court of review may not avert its

---

* Italics, mine.

gaze when it finds on the upper side of the sieve fair-sized pebbles of incorrect statements of the law. The Trial Judge charged here: "Did he [Muffley] hit Mrs. Nyce at the intersection where she, as a pedestrian would have the right of way, or was it a point below the intersection, *where a motorist could not ordinarily expect to find someone crossing the street.* Your determination on that point will have a great bearing upon the verdict that you will render."

The Judge here conveyed the impression that it was quite extraordinary for one to cross a street between intersections, but we know from common knowledge, aside from the many cases which come into the courts, that it is not only not extraordinary for pedestrians to traverse streets between crossings but that it is not illegal to do so. Common prudence, of course, dictates that it is safer to cross at an established intersection, but taking the Twentieth Century as it is, with its emphasis on speed and short cuts, we cannot overlook the fact that foot passengers *will* cross between intersections—and motorists cannot ignore that this practice is something to be expected in any busy city, as Allentown unquestionably is. In the very recent case of *Yurkonis v. Dougherty,* 382 Pa. 387, 390, the lower Court charged the jury: "If from all of the testimony, you find that Clarence Yurkonis [the decedent] was negligent in not crossing Lehigh Avenue at a regular intersection, then your verdict must be for the defendant . . . if such negligence caused or contributed to the happening of the accident."

This Court reversed, not only because of the presumption that the decedent had used due care, but because: "One crossing at other than regular intersections is charged with a higher degree of care . . . but it is not in itself negligence to do so. . . The point given to the jury could well have been taken by it to

mean that the jury could find decedent was negligent per se in 'not crossing . . . at a regular intersection,' and in such case was bound to find for defendant. That it could have led the jury to conclude that decedent was contributorily negligent, where it otherwise would not have so found, cannot be doubted. The court did not 'in plain language try to make these principles understandable to a jury'; and there being no amplification or qualification it was inaccurate and prejudicial."

In affirming the defendant's first point for charge, the Trial Judge here inadvertently used the word "plaintiff" when he meant "defendant": "Now I am affirming the Plaintiff's first point for instruction. The mere fact that an accident occurred between an automobile and a pedestrian, and that Mrs. Nyce was injured, does not mean that Mrs. Nyce is entitled to a verdict."

If this had been the only error in the charge, it would not be of sufficient gravity to vitiate it. Since, however, the Judge in various portions of his charge stated the law and the facts in such a manner as to suggest (unintentionally, of course,) the idea that the plaintiff's case was indeed a difficult one to prove, the jury could well have concluded from the point just quoted that the plaintiff herself admitted that her case was a weak one indeed.

Without reflecting in any way on the ability and the intention of the Trial Judge to present the case to the jury most impartially, I believe that errors were committed which should entitle the plaintiff to a new trial.