## Allstate Insurance Company *v.* Stinger

## (et al., Appellant).

534

Argued April 29, 1960. Before JONES, C. J., BELL, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused July 14, 1960.

*Paul C. Van Dyke*, with him *Cochrane & Van Dyke*, for appellants.

*James M. Marsh*, with him *LaBrum and Doak*, for appellee.

OPINION BY MR. JUSTICE BOK, June 30, 1960:

This is a petition for a declaratory judgment filed by an insurance company seeking a declaration of its rights. It issued a policy of automobile insurance to the defendant Stinger. The court below at first upheld the policy but after hearing further testimony held it void. It also disallowed the intervention of the de-

fendants Manko, who were in collision with Stinger and who have now appealed. The Mankos were allowed to litigate the whole case, and it was only at the end that the court below refused intervention in its last order and held the policy void. Hence they have standing to appeal. Stinger has not appealed.

The case involves Stinger's negative and false answer to the following declaration, which the policy states was a representation: "10. During the past two years, with respect to the named insured . . . (1) . . . nor (2) has any license or permit to drive an automobile been suspended, revoked, or refused."

Stinger's license was in fact revoked for two months between February 23 and April 30, 1956, because he was an incompetent driver. The incompetence resulted from his being an inmate of the Emoryville State Hospital as a mental patient between January 3 and April 3, 1956. Upon certification by the hospital that he was competent to drive, his license was restored on April 30, following his discharge.

A year later, on June 27 and 28, and July 15, 1957, he had three accidents, the last of which involved the Mankos, and it was during the negotiations of these matters that the plaintiff disclaimed because of the false answer to the above declaration. The policy was issued on May 22, 1957, the application containing the declaration having been signed the day before. The policy was cancelled by the plaintiff, by letter dated August 12, because of Stinger's bad driving record. Suit was started by the defendants Manko against Stinger on December 8, 1957, and the plaintiff's disclaimer was dated December 18.

Defendants Manko contend that they are interested parties and should have been allowed to intervene. Defendant Stinger contends that his answer to the declaration, which he admits was false, was not made in

bad faith nor was it material to the risk. The plaintiff takes the opposite view.

As for the Mankos' petition to intervene, the court below at first granted it and later struck it off. This was error. The Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, §2; 12 PS §832, reads as follows: "Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder."

The position of the court below and of the appellee is that a stranger to the contract of insurance has no rights when the contract is void *ab initio*. This begs the question, since the inquiry is precisely whether the intervening Mankos are strangers and whether the contract is or is not void ab initio.

In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U. S. 270, 61 S. Ct. 510 (1941), the Supreme Court of the United States said: "Thus we hold that there is an actual controversy between petitioner [the insurance carrier] and Orteca [the injured third party] and hence that petitioner's complaint states a cause of action against the latter."

In *Hoosier Casualty Co. of Indianapolis v. Fox*, 102 F. Supp. 214 (1952), the court said, in a declaratory judgment proceeding: "It is authoritatively settled that where an insurance company asks for a declaration of non-liability or noncoverage on a policy similar to the one in question that injured persons have the same status as claimants herein and are proper parties defendant." See also *Travelers Indemnity Co. v. Cochrane*,

155 Ohio St. 305 (1951) 98 N.E. 2d 840; *Employers Liability Assurance Corp. v. Maguire,* 65 Pa. D. & C. 231 (1948).

Hence we are of opinion that the rights of the appellant Mankos, as plaintiffs against the insured Stinger, are affected by the policy, that they are interested persons, and that they are therefore entitled to have their rights declared.

On the question of falsity and materiality to the risk, the pertinent rules are laid out in the case of *Evans v. Penn Mutual Life Insurance Co.,* 322 Pa. 547 (1936), 186 A. 133, where we said: "These principles may be summarized as follows (1) Where the statements made by insured in the application are warranted by him to be true, or where the policy expressly provides for its avoidance by the falsity of such statements, the insurer may avoid the policy by showing the falsity of statements material to the risk, irrespective of insured's knowledge of their falsity or of his good faith in making them. (2) Where the statements are made representations, the insurer, to avoid the policy, must show they were false and insured knew they were false or otherwise acted in bad faith in making them. (3) If such falsity and the requisite bad faith affirmatively appear (a) from competent and uncontradicted documentary evidence, such as hospital records, proofs of death, or admissions in the pleadings, or (b) from the uncontradicted testimony of plaintiff's own witnesses, a verdict may be directed for the insurer. (4) But whenever disputed questions of fact are presented by conflicting evidence, whether documentary or oral, or whenever the insurer's defense depends upon the testimony of its witnesses, even though such testimony is uncontradicted, the case must be submitted to the jury, subject to the trial court's power to award a new trial as often as in its sound discretion it may think the in-

terests of justice require. (5) When the suit is in equity, the chancellor is the sole trier of fact, and submission to a jury is not required except where he deems it advisable."

The plaintiff concedes that the declaration is a representation, not a warranty, and Stinger concedes that his answer was false but contends that it was made in good faith. The test is, therefore, the materiality of the answer and the good faith of Stinger.

It may be conceded that mental illness would be material to the risk, but however material it cannot avoid the policy unless it was also concealed or otherwise misrepresented in bad faith. The court concluded this question by making the following finding of fact in its first opinion: "There is no evidence that defendant acted in bad faith in answering the question pertaining to his license revocation, and there is a dispute in the evidence as to how the question was presented." The dispute was that the insurance agent who took the application testified that he read the declaration to Stinger precisely as written and received a flat negative answer: whereas Stinger testified that the agent paraphrased it and related it to being in an accident. He therefore thought that the question had to do with driving his car and not with his being a hospital patient for other causes.

Further testimony was then taken, but none on the point of good faith. The court said in its second opinion: "At the first hearing plaintiff proved that the defendant's answer to the foregoing question was false, and that he knew it was false (although defendant placed a different interpretation on the meaning of the question.)" But the court did not ascribe bad faith to defendant's knowledge of the falsity of his answer, and hence the finding of its lack remains. In *Evans* we said, at page 563: "Mere mistakes, inadvertently made,

even though of material matters, or the failure to furnish all details asked for, where it appears there is no intention of concealing the truth, does not work a forfeiture, and a forfeiture does not follow where there has been no deliberate intent to deceive, and the known falsity of the answer is not affirmatively shown."

Hence Stinger's false answer is in the category mentioned in *Evans*: "Nothing in this documentary evidence shows that Evans thought or had any reason to think the dislocation he suffered before his application for insurance were more than slight and temporary indispositions, too trivial to be reported in the application."

An insurer cannot evade its firm contract at will. This case is not like *Cahill v. Philadelphia,* 381 Pa. 611 (1955) 114 A. 2d 99, and *Kizirian v. United Benefit Life Insurance Co.,* 383 Pa. 515 (1956), 119 A. 2d 47, where the applicants had cancer but flagrantly misrepresented it and the fact was clearly proved.

A cancer case *contra* is *Burton v. Pacific Mutual Life Insurance Co.,* 368 Pa. 613 (1951), 84 A. 2d 310, where the applicant for insurance had incurable cancer but the doctors had not told him. We held that the burden was on the defendant "to prove that the representations were false and that Burton knew they were false when he made them or otherwise acted in bad faith in making them."

In *Levin v. Metropolitan Life Insurance Co.,* 381 Pa. 615 (1955), 114 A. 2d 330, we said, by Mr. Justice BELL: "In order to avoid an insurance policy the company must establish that the statements relied on were material to the risk and were falsely and fraudulently made. Inquiries as to the prior diseases and prior medical attendance are material to the risk, and false answers, if knowingly made, permit the insurer to avoid the policy."

It is not enough to show simple knowledge that an answer is false: the knowledge of falsity must be acted upon in bad faith. In *Travellers Insurance Co. v. Heppenstall Co.*, 360 Pa. 433 (1948), 61 A. 2d 809, we said, by Mr. Justice STERN: "It is, of course, well established that in order to avoid a policy on the ground of alleged fraudulent representations, the insurer must show not only that the statements were false but that the insured knew they were false or otherwise acted in bad faith in making them. . . . The Chancellor found that Daines [the insured] acted throughout in perfectly good faith and that none of the representations he made was knowingly untrue."

Finally, there is no evidence even of materiality because there is no showing of mental illness or of any reason for Stinger's being a patient in the State Hospital. He might have been there for tests and passed them. He might have committed himself for observation. He might have been there for a nervous disorder, like melancholia, and not for a psychosis or mental illness. There is no shred of proof why he was there. All we have is the *ipse dixit* of the insurer that anyone who is a mental patient in an institution, regardless of his diagnosis, is incompetent and that the fact is material to the risk. The plaintiff's underwriting manager said that "if a man has received treatment of that sort, was hospitalized or treated for something of that sort" (without saying what the something or the treatment or the sort was), his company would not issue him insurance for from five to twenty years after his release. This is a serious matter, and the company should not be allowed to adopt any such position without showing, when challenged, what was wrong with the applicant and giving facts that a court might pass upon.

In sum, when dealing with a representation in an application for insurance, the insurer may not success-

fully disdain liability unless three conditions concur: (1) the declaration by the applicant must be false; (2) its subject matter must be material to the risk; and (3) the applicant must have known it to be false and it must have been made in bad faith.

The plaintiff has failed to sustain its burden of proof with respect to (2) and (3), and hence the policy is not void *ab initio*. Appellants are therefore entitled to coverage.

The judgment is reversed.

———

DISSENTING OPINION BY MR. JUSTICE BELL:

Defendant Stinger admitted that he falsely answered the following question in his written application for an insurance policy: "Have you or anyone in your household ever had a suspension, revocation or refusal of any automobile license or permit to drive?" Stinger answered this question "No" and it was so marked in the application. We quote from the Opinion of the trial Judge:

". . . This question and answer appear in the application, wherein the following statement appears just above Stinger's signature: 'I hereby declare the facts stated herein to be true and request the Company to issue the insurance, and any renewals thereof, in reliance thereon.'

"The policy of insurance, including a 'Supplement' page was introduced in evidence. Plaintiff relies heavily on Declaration No. 10 as being crucial in this case: 'During the past two years, with respect to the named insured or any member of his household, . . . nor (2) has any license or permit to drive an automobile been suspended, revoked or refused.'

"The policy provides that the policy is issued in reliance upon the Declarations on the Supplement page; and on the last page appears the following: '11. Effect of Policy Acceptance. By acceptance of this policy the named insured agrees that the Declarations on the Supplement Page are his agreements and representations and that this policy embodies all agreements relating to this insurance, existing between himself and Allstate and any of its agents.'

"Stinger's testimony as to the asking and answering of the questions on the application is somewhat conflicting. At first, he indicated that the agent had asked each question as printed (the agent so testified); but when Stinger was asked what the agent had asked in reference to revocation of his license, he replied: 'In reference to my license he asked me if I or anybody in my family had had my license revoked or suspended, I think within a period of two years, for being in an auto accident, and I replied no.' "

Stinger's license was in fact revoked* for over two months in 1956 because he was an incompetent driver and was confined to a mental institution. The language in the insurance policy and in the application for the policy required no legal learning to interpret its meaning, it was so clear and plain and simple that a twelve year old child could not have misunderstood it.

Moreover, the majority opinion has overlooked another controlling factor, namely, the trial Judge sitting as a jury found the following facts in favor of plaintiff and there was overwhelming evidence to support these findings, namely:

"At the first hearing, plaintiff proved that the defendant's answer to the foregoing question was false,

---

\* Plaintiff introduced in evidence a certificate of the Secretary of Revenue showing suspension of Stinger's license on February 23, 1956 to April 30, 1956 because he was an "incompetent operator".

and *that he knew it was false** . . . . The evidence offered at the second hearing substantiates plaintiff's assertion that such information was material to the risk, and that the defendant would not have secured a policy of automobile insurance from the company had he revealed his background of mental illness which was within a period of two years prior to his application for the policy."

Furthermore, the majority have, in my judgment, misapprehended the recent case of *Kizirian v. United Benefit Life Insurance Company*, 383 Pa. 515, 119 A. 2d 47. In that case this Court entered judgment for defendant non obstante veredicto, holding that inquiries by an insurer as to prior medical or hospital attendance of an applicant for life insurance are material to the risk and false answers thereto permit the insurer to avoid the policy. The Court in an opinion which cited many cases said (page 520):

" 'Where it affirmatively appears, from sufficient documentary evidence [or from plaintiff's admissions or both], that the policy was issued in reliance on false and fraudulent statements, made by or on behalf of the insured, as where false answers are shown to have been given by the insured under such circumstances that he must have been aware of their falsity, the court may direct a verdict or enter judgment for the insurer.'

"Under the facts in this case it is clear from the hospital records, as well as from plaintiff's admissions that the insured made false and fraudulent statements which were material to the risk and thus prevent recovery on the policy. There is no merit in plaintiff's contention that the false statements were inadvertent and the concealments unintentional and consequently these questions should be left to the jury; nor was there any duty upon the Insurance Company, under the facts

---

* Underlining ours.

in this case, to investigate and determine for itself the truth or falsity of the material statements made by the insured."

I would hold (1) that plaintiff, as well as all parties, have an adequate and more appropriate remedy at law and the facts present no justification for a declaratory judgment: *Wirkman v. Wirkman Co.*, 392 Pa. 63, 139 A. 2d 658; *Eureka Casualty Co. v. Henderson*, 371 Pa. 587, 92 A. 2d 551; *Capital Bank and Trust Company's Petition*, 336 Pa. 108, 6 A. 2d 790; *Lifter Estate*, 377 Pa. 227, 103 A. 2d 670; (2) if a declaratory judgment proceeding is allowed the Mankos are proper parties; (3) where no fraud or mutual mistake is alleged and proved, Stinger cannot avoid his admittedly false representation which was obviously a very material inducement to the issuance of the policy, by oral testimony which varies or contradicts or negates the written instruments. Stinger admits that his answer was false and, we repeat, a child twelve years old would have known (if he had made it) that it was both material and false. If the law permits a party to a written instrument to "explain away" and circumvent or nullify language which is plain, clear and unambiguous, by allegations or testimony that he didn't understand it, or he misunderstood it, or it was explained "different" to him, what is the use of having a *written* contract or a *written* application if it can be thus changed, contradicted and nullified. And what happens to the parol evidence rule which until now was both clear and well established, viz: Where a written agreement is not ambiguous and where no fraud, accident or mutual mistake is averred and proved, parol evidence of a prior or contemporaneous oral representation or agreement which varies, modifies or conflicts with a complete written agreement, is inadmissible in evidence: *Amour Estate*, 397 Pa. 262, 154 A. 2d 502;

*Furjanick Estate*, 375 Pa. 484, 100 A. 2d 85; *Phillips Gas and Oil Co. v. Kline*, 368 Pa. 516, 84 A. 2d 301; *Grubb v. Rockey*, 366 Pa. 592, 79 A. 2d 255; *Walker v. Saricks*, 360 Pa. 594, 63 A. 2d 9; *Gianni v. Russell & Co., Inc.*, 281 Pa. 320, 126 A. 791; *Speier v. Michelson*, 303 Pa. 66, 154 A. 127; *O'Brien v. O'Brien*, 362 Pa. 66, 66 A. 2d 309; *Russell v. Sickles*, 306 Pa. 586, 160 A. 610.

I strongly dissent.

Mr. Justice BENJAMIN R. JONES joins in this dissenting opinion.