## Ciesielski v. Prudential Insurance Company of America, Appellant.

Argued September 29, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused December 16, 1964.

*John H. Scott, Jr.,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*Walter J. Laska,* with him *Francis Taptich,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, November 10, 1964:

On August 31, 1957, Anthony Luta applied for life insurance and was required, as is the practice in such matters, to answer in writing certain questions with regard to the state of his health, current and past. One of the questions read: "Have you ever been treated for or had any known indication of (e) ulcer of stomach or intestines, or rectal disorder?" He answered this question "No."

On July 9, 1958, he died of carcinoma of the esophagus. The insurance company refused to pay the face amount of the policy to the beneficiary, claiming fraud and misrepresentation on the part of the insured.

In the ensuing litigation, the trial court submitted to the jury the question as to whether the insured had made false statements or had acted in bad faith. By its verdict the jury answered that there had been no fraud. The insurance company has appealed, urging upon us that the documentary records in the case entitle it to judgment n.o.v., since it should have had binding instructions at the trial.

To begin with, the insurance policy expressed that all statements made by the insured in the application were representations and not warranties. Therefore, for the appellant to prevail it must show that the insured knowingly practiced a deception on the insurance company. *Burton v. Pacific Mutual Insurance Co.,* 368 Pa. 613; *Travellers Insurance Co. v. Heppenstall Co.,* 360 Pa. 433.

Did Luta know he had cancer? There is nothing in the record to establish such awareness. The medical records introduced by the defendant show that this dread disease had indeed fastened its mortal coils about the insured's digestive tract, but mercifully he was ignorant of the knowledge. He had complained to his physician, Dr. Klueber, of difficulty in swallowing certain foods; the doctor sent him to a hospital for x-ray studies; Dr. Sheedy, the radiologist who read the x-rays, informed Dr. Klueber that he found evidence of carcinoma and Dr. Klueber sent Luta to a general surgeon, Dr. Tetlow, who confirmed the radiologist's conclusions. But no one of these doctors told Luta that he had cancer. Nor did he suffer any symptoms which might warn him that a time bomb was ticking away in his body.

Ignorance of the law may be no excuse, although this strait jacket, often cruel in its application, has undergone some relaxation during recent decades, but there can be no question that ignorance of facts when one is not negligent in ascertaining the facts, can never bind one to the unknown. What does not enter one's conscious world is as if it did not exist insofar as legal or moral responsibility for it is concerned, assuming, all the time, of course, that the person involved in no way sought to avoid the facts. There is not the slightest suggestion in the record that Luta endeavored to draw a veil over the knowable.

There were no facts adduced at the trial to suggest that Luta had any reason to believe that a cable was pulling him toward the cemetery. Indeed, in this respect, nature played an inscrutable trick by assuring him that he was in good health. After taking some medication prescribed by Dr. Klueber he experienced such an exuberance of salubrity that he told a Joseph Ciesielski, who so testified, that he "felt like a new man." This sense of renewed vigor was such that he

worked up to the date of his death. Thus, neither doctor, nor druggist, nor ever-babbling circumstance suggested to Anthony Luta that his days were numbered. Nor was there anything written in the notebook of memory to remind him that he should answer the questions in the insurance application in any manner other than the way in which he did answer them.

Reduced to basic essentials, the question in this case was one strictly of fact and that question was resolved by the fact-finding tribunal with no stumbling over application of the law, as correctly submitted by the trial judge.

Judgment affirmed.