Lynch *v.* Metropolitan Life Insurance Company, Appellant.

Argued January 16, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Arthur W. Leibold, Jr.,* with him *Barton J. Winokur, Owen B. Rhoads,* and *Dechert, Price & Rhoads,* for appellant.

*Tom P. Monteverde,* with him *Charles W. Woolever,* and *Schnader, Harrison, Segal & Lewis,* for appellee.

OPINION BY MR. JUSTICE JONES, November 14, 1967:

The refusal of motions for a judgment non obstante veredicto or, in the alternative, a new trial in an as-

sumpsit action based upon a life insurance policy is challenged on this appeal.

Important to a determination of one phase of this appeal, a recital of certain facts is necessary.

Jarman Lynch (Lynch), 21 years of age and with a very limited educational background, in the early part of 1958 noticed a "fullness in his right testicle". On August 25, 1958, he consulted a doctor who referred him to the University of Pennsylvania Surgical Clinic which he attended, first as an out-patient on August 29, 1958, and later as an in-patient on September 1, 1958. At that time, Lynch authorized the removal of his right testicle and such surgery took place on September 4, 1958. Discharged from the hospital on September 11, 1958, he had another hospital examination on September 18, 1958 and he was told to return in November for chest X-rays. Lynch was not advised of the diagnosis of his condition other than the necessity of removing his right testicle. Prior and subsequent to the surgery, Lynch was regularly employed in work which required lifting of heavy objects. During October, 1958, he experienced pains in his back which radiated down his right leg, pains which he associated with the performance of his work.

Thereafter, Lynch applied to the Metropolitan Life Insurance Company (Company), for an unrated policy of life insurance and, at that time, he signed part A of the usual life insurance application. On November 4, 1958, he signed part B of the application which consisted of questions addressed to him by the Company's medical examiner and his responses thereto. At that time the Company's medical examiner gave Lynch a physical examination. Lynch stated, in response to the part B questions, that: (a) he was *then* in good health and able to perform his full duties; (b) he had been "last sick" in 1957 in Washington, D. C. with a cold of "few days duration"; (c) he had not lost time from

school or work because of poor health during the past five years; (d) he had not been treated or sought advice concerning any ailment or disease of the prostate, bladder, pelvic organs, kidneys, bones, glands, eyes, ears, cancer, tumor, ulcers, rheumatism, gout, arthritis or varicose veins; (e) in September, 1958, at the "Penna. Hosp., Phila." he had undergone a "Rt. inguinal herniorrhaphy"; (f) he had not had an electrocardiogram, X-ray examination, laboratory examination or tests and had not consulted a physician within the past five years for any reason not therein mentioned. After certifying he had read the answers in part B, Lynch stated, in writing, that such answers were "correctly written" as given by him, were "true and complete" and that there were no exceptions to such answers. Under the policy provisions, the statements made by Lynch were "deemed representations and not warranties". (Exhibit, Rec. 7a).

Subsequent to execution of part B of the application, on two occasions—November 13 and 15, 1958—Lynch, complaining of back and leg pains, visited a doctor and, on November 13, 1958, returned to the University of Pennsylvania Hospital for chest X-rays which proved negative. One week later, Lynch, complaining of chest, spine and leg pains, returned to the hospital as an out-patient and the following day—November 21, 1958—was given X-ray examinations which, *unknown to Lynch*, disclosed "extensive osseous metastatic disease". Deep X-ray treatments were begun and continued almost daily until December 2, 1958. During this period, Lynch suffered nausea, vomiting, malaise and continued back pain and, during the last week of November, he ceased working.

In the meantime, Lynch applied to the Company for a rated insurance policy rather than the undelivered unrated policy previously applied for and he was requested to and did execute an *amendment* to his pre-

vious application for the unrated policy. That amendment read as follows: "These amendments and declarations are to be considered as a part of the said application and subject to the agreements, covenants, and statements therein contained. The said application, together with these amendments, is to be considered as the basis of and as a part of the contract of insurance. The said application, as amended, is correct and true, and I hereby ratify and confirm the statements therein made as of the date hereof." The Company contends that Lynch knowingly gave false answers in part B of the application on November 4, 1958 and ratified such answers on December 2, 1958 by the execution of the amendment. The new rated policy was delivered on December 2, 1958.

Lynch later went to Duke University Hospital in North Carolina where he was hospitalized from December 17 to December 23, 1958. He died on January 24, 1959 of rhabdomyoscarcoma, which the Company contends, spread from the right testicle to other parts of his body, a condition diagnosed at the University of Pennsylvania Hospital in September 1958.

Upon refusal to pay the policy, Averlean Lynch, widow-beneficiary under the policy, instituted an assumpsit action against the Company in Court of Common Pleas No. 7 of Philadelphia County. Upon issue joined—complaint, answer containing new matter and reply to new matter—the case was heard before a court and jury and a verdict rendered in favor of Averlean Lynch and against the Company in the amount of $11,-770.06. Refusal of the Company's motions for judgment n.o.v. and a new trial resulted in the entry of judgment on the verdict and this appeal.

The Company advances two reasons for the entry of judgment n.o.v.: (1) the application amendment of December 2, 1958, and the original applications of October 24 and November 4, 1958, being part of the policy

in litigation, the uncontradicted documentary evidence and oral testimony prove that Lynch knowingly and in bad faith falsely answered the questions contained in the applications; (2) at the time the policy was delivered—December 2, 1958—Lynch was not insurable. Urging a new trial, the Company contends: (1) the court erred in its jury instructions; (a) despite the court's ruling that the application amendment dated December 2, 1958, had been shown to have been attached to the policy and, thus, admissible in evidence and the Company's reliance upon such ruling, the court, in its charge, permitted the jury to decide whether the amendment, *as a matter of fact,* had been attached to the policy when delivered; (b) in permitting the jury to ignore the clear language of the amendment; (c) in permitting the jury to decide whether knowledge or misunderstanding on the part of the Company medical examiner vitiated Lynch's obligation to give truthful answers; (2) the court further erred; (a) in refusing to withdraw a juror after Averlean Lynch's counsel's comment to the jury concerning the Company's failure to call its agent as a witness and (b) in admitting in evidence two wedding pictures of Lynch and the appellee taken approximately five months prior to delivery of the policy.

## Motion for Judgment N.O.V.

In passing upon the propriety of entering a judgment n.o.v., we must view the evidence, together with all the reasonable inferences therefrom, in the light most favorable to Averlean Lynch, the verdict-winner: *Brandon v. Peoples Natural Gas Co.,* 417 Pa. 128, 130, 207 A. 2d 843 (1965). Moreover, on the state of this record, we cannot find that the amendment was *not* attached to the policy, in fact, the Company tried the case on that theory and, in passing upon this motion,

we act upon the assumption that the amendment was attached to the policy when delivered and, therefore, consider the answers on the applications as given by Lynch. In *Allstate Insurance Co. v. Stinger,* 400 Pa. 533, 163 A. 2d 74 (1960), we held that, when dealing with an insured's statements in an application for life insurance which are representations and not warranties, the insurer must show: (1) the statements by the applicant-insured were false; (2) their subject matter was material to the risk; and (3) the applicant-insured must have known them to be false and made them in bad faith. In *Evans v. Penn Mutual Life Insurance Co.,* 322 Pa. 547, 550-554, 186 A. 133 (1936), we pointed out that, where the statements in an application are representations rather than warranties, the insurer, in order to avoid liability, has the burden of showing that not only were the statements false but also that, *when made,* the insured knew they were false or acted in bad faith in making such statements. See also: *Shafer v. John Hancock Mutual Life Insurance Co.,* 410 Pa. 394, 398, 189 A. 2d 234 (1963).

It is evident that Lynch's statements were material to the risk and, in certain instances, were contrary to the facts of his medical background. However, the evidence as to whether Lynch, when he made the statements, knew of their falsity or made them in bad faith falls short of the standard of proof upon which the entry of a judgment n.o.v. can be predicated. The record portrays Lynch as a young man with a meagre educational background who was advised to and did submit to an operation for the removal of a testicle to relieve a condition of "fullness" therein. Insofar as the record indicates, Lynch at least prior to the time when he executed the amendment to the application, did not know that the difficulty in the testicle and the radiating pains in his chest, leg and back arose from the on-

set of a cancerous condition.[1]  The hospital diagnosis of his condition in September, 1958, was not revealed to him and, in fact, the first set of X-rays taken in November, 1958, were negative.  On the record before us, Lynch was unaware of the presence of any malignant condition in his body and of the relationship between such condition and the necessity for the removal of his testicle.  Lynch did reveal that he had been in the hospital in September 1958 although the application stated that such hospitalization was due to a "right inguinal herniorrhaphy".  In connection with the reason given by Lynch in the application for his hospitalization in September 1958, it should be noted that the Company's medical examiner, who should have been alerted by the presence of the surgical scar and the absence of the right testicle, did not check the hospital record or make any effort to ascertain the *exact* nature and reason for the surgical procedure and, in fact, made no reference to the surgical scar in his report to the Company of his examination of Lynch.  It is natural to wonder why, if the operative procedure did not alert a doctor to the possibility of an existent serious condition, Lynch should be held to knowledge of the existence of such condition.  This record does not reveal the presence of any circumstances which show conclusively that, when Lynch made the statements, he *then* knew they were false and made them in bad faith such as to justify the entry of a judgment n.o.v. Whether Lynch had knowledge of the falsity of his statements and whether he acted in bad faith were questions clearly for resolution by a jury and not by the court below as a matter of law.  In refusing to enter

---

[1] Cf. *Evans*, supra, at p. 563; *Travellers Insurance Company v. Heppenstall Co.*, 360 Pa. 433, 437-439, 61 A. 2d 809 (1948) ; *Burton v. Pacific Mutual Life Insurance Co.*, 368 Pa. 613, 614, 84 A. 2d 310 (1951) ; *Ciesielski v. Prudential Insurance Co.*, 416 Pa. 146, 205 A. 2d 42 (1964).

judgment n.o.v. for this reason the court below acted properly.

The Company also argues that the continued insurability provision of the policy bars recovery by Averlean Lynch because the insured was suffering from incurable cancer at the time the policy was issued. However, this was not known to the insured and, furthermore, the Company had had the insured examined by its medical examiner at the time. The jury could well have concluded that the insured had no intent to deceive. *Ciesielski v. Prudential Insurance Co.,* 416 Pa. 146, 205 A. 2d 42 (1954). Cf. *Davidson v. John Hancock Mutual Life Insurance Co.,* 159 Pa. Superior Ct. 532, 49 A. 2d 185 (1946); *Prudential Life Ins. Co. v. Kudoba,* 323 Pa. 30, 36, 186 A. 793 (1936). *Benzinger v. Prudential Life Insurance Co.,* 317 Pa. 561, 564, 176 A. 922 (1935), upon which the Company relies, is factually inapposite.

### Motion for a New Trial

Attached as an exhibit to the complaint were the policy, parts A and B of the policy application and the application amendment of December 2, 1958 which Averlean Lynch averred she "believe[d] to be a true and correct copy of this policy" (Para. 3). At trial, Mrs. Lynch stated that she did not "remember" whether the application was part of the policy at the time she presented it to the Company. Mrs. Lynch's counsel offered in evidence the policy *without the application amendment*; to this offer the Company's counsel objected. The trial court ruled that, since the application amendment had been pleaded in the complaint and had been identified as having been attached to the policy when the claim was rejected, the policy *with the amendment attached* was admissible in evidence. Upon completion of the testimony, the trial court, affirming

a point for charge presented by Mrs. Lynch's counsel, instructed the jury: "4. In order for you to decide this case on the basis of Jarman Lynch's medical history as of December 1 or 2, 1958, you must first find that a signed and dated copy of the Application Amendment dated December 2, 1958 was attached to the defendant's policy at the time the policy was delivered to Jarman Lynch.

"That is a correct statement of the law, and I have so stated to you. The significance of that attachment or nonattachment to the policy is: Was this part of the contract between the parties as of the date it speaks of, namely, December the 2nd, 1958. That is one day after the policy, itself, was dated, December the 1st, 1958, and that is a correct statement of the law. Was it part of the contract between the parties, and was it attached to the policy?"

The law is clear that, while the failure to attach an application for a life insurance policy does not affect the validity or admissibility in evidence of the policy itself, (*Ellis v. Metropolitan Life Ins. Co.*, 228 Pa. 230, 77 A. 460 (1910)), the failure to attach the application to the policy when delivered renders the application inadmissible in evidence (Act of May 17, 1921, P. L. 682, §318, 40 P.S. §441; *Syme v. Bankers National Life Insurance Co.*, 393 Pa. 600, 144 A. 2d 845 (1958); *Sandberg v. Metropolitan Life Insurance Co.*, 342 Pa. 326, 20 A. 2d 230 (1941); Goldin, The Law of Insurance in Pennsylvania, Vol. II (2d ed.), §725, pp. 598, 599. In the case at bar, whether the application amendment was attached to the policy when delivered was of vital importance since the Company relied thereon for proof of Lynch's ratification of the Lynch's statements in part B of the application.

The trial court's original ruling as to the admissibility of this application amendment followed by the court's instructions to the jury on this issue created an

anomalous situation which seriously prejudiced the Company. After the trial court ruled that the application amendment was admissible in evidence, the Company had every right to rely on such ruling which certainly indicated that the question of the attachment of such amendment was no longer an issue. Lulled into security by such ruling, the Company did not introduce evidence to show such attachment in compliance with the Act of 1921, supra. After the Company's opportunity to present such proof had ceased to exist, the trial court then submitted the question of attachment to the jury to be resolved by it as a factual issue. The reversal of its position by the trial court so prejudiced the Company that a new trial is mandated.

Since this case must be retried, it may not be amiss for us to comment on the receipt into evidence of two pictures of Lynch taken at the time of his marriage on July 12, 1958. The purpose of the offer of these photographs was to show how Lynch looked within several months of the application for insurance. Whether or not such photographs were admissible was clearly within the discretion of the trial court (*Nyce v. Muffley,* 384 Pa. 107, 111, 119 A. 2d 530 (1956)); no abuse of such discretion has been demonstrated.

The judgment is reversed and a new trial granted.

———

Concurring and Dissenting Opinion by Mr. Justice Musmanno:

I concur in the refusal of a motion for judgment non obstante veredicto, but dissent in the awarding of a new trial. I do not believe that the insurance company was prejudiced by the trial court's ruling on the application amendment to the extent that it could not have introduced evidence in support of its position.

Mr. Justice Eagen joins in this concurring and dissenting opinion.