Metts *v.* Griglak et al., Appellants.

Argued October 2, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Thomas A. Waggoner,* with him *D. W. MacDonald,* for defendants, appellants.

*Herman M. Buck,* with him *Harry Humbert,* and *Ray, Buck & John,* for additional defendant, appellee.

OPINION BY MR. JUSTICE POMEROY, April 22, 1970:

This action arose out of a rear-end collision in which a bus owned by Albert and Cyril Griglak and John Stolarik, doing business as the Perry Bus Lines, struck from behind an automobile driven by Mrs. Helen R. Harshman. The accident occurred on the afternoon of February 6, 1966 on Route 51 in Westmoreland County. At the place of the accident Route 51 is a divided four-lane highway, and at the time the vehicles collided the stretch of highway in question was slippery and covered with snow and ice.

Joseph H. Metts was a passenger on the Perry bus when the accident occurred. Thereafter, he brought suit for personal injuries against the Griglaks and Stolarik (hereinafter collectively referred to as Perry); Mikael R. Torkysh, the driver of the bus; and Mrs. Harshman. By a third party complaint pursuant to Pennsylvania Rule of Civil Procedure 2253, Mrs. Harshman joined the Greyhound Corporation (hereinafter Greyhound) as an additional defendant. In Mrs. Harshman's third party complaint, she averred that immediately before the accident she was traveling south on Route 51 when a bus owned and operated by Greyhound overtook and passed her car in the left-hand lane; that in doing so the Greyhound bus had crowded her automobile into a snowbank on the right side of the highway causing her to lose control of its operation; that immediately thereafter her automobile was struck by the Perry bus; that this collision was the direct result of the negligent operation of the Greyhound bus; and that any injuries sustained by plaintiff Metts were proximately caused by the concurrent negligence of Perry, Torkysh, and Greyhound.

After trial the jury returned a verdict in favor of the plaintiff and against all the defendants, including the additional defendant Greyhound. Greyhound filed motions for judgment n.o.v. and for new trial; the court

*en banc* granted the n.o.v. and ordered the entry of judgment in favor of Greyhound and against all original defendants.[1] From the judgment, the original defendants have taken this appeal.

"In considering a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Bohner v. Eastern Express, Inc.*, 405 Pa. 463, 466, 175 A. 2d 864 (1961) and *Lynch v. Metropolitan Life Insurance Co.*, 427 Pa. 418, 235 A. 2d 406 (1967). With regard to Greyhound's liability for the damages arising from this accident, the plaintiff and the original defendants (appellants) have a community of interest. Greyhound having been joined by appellants' third party complaint, the appellants, as well as the plaintiff, were "verdict winners", and the above quoted standard for review of the evidence is applicable to them. Viewed in that light, the facts of this case are as follows: Shortly before the accident Mrs. Harshman and the Perry bus were proceeding south on Route 51 several car lengths apart from each other at speeds of approximately 30 to 35 miles per hour. Both vehicles were in the right-hand lane, and the Perry bus was traveling behind the Harshman automobile. They were overtaken and passed by a Greyhound bus traveling in the left southbound lane at approximately 60 miles per hour or some 10 miles per hour over the posted speed limit. The Greyhound bus, in so passing the other vehicles, splashed slush and raised a cloud of snow which obscured the vision of the other drivers. Although he

---

[1] In so doing, the lower court stated that if it should be reversed on its entry of judgment n.o.v. in favor of Greyhound, it would grant a new trial, since in its view the weight of the evidence was strongly in favor of Greyhound.

was unable to see, Torkysh, the Perry driver, continued ahead without reducing the speed of his bus. When the road ahead again became visible, Torkysh saw the Harshman automobile immediately ahead of him, apparently in a slight skid but fully in the right-hand lane. Torkysh was unable to avoid colliding with it, and Metts, a passenger on the bus, sustained an injury to his back in the collision. Neither the bus nor the Harshman automobile were using chains at the time, nor was Torkysh using the sander with which his bus was equipped. At the point of the accident there was an uninterrupted view of the highway for one-half mile, and all parties agreed that the Greyhound bus was out of sight when the accident took place. The point of collision was 1,500 to 2,000 feet from the point the Greyhound bus passed the other vehicles. While the exact position of Mrs. Harshman's automobile at the point of collision was a matter of some conjecture, no evidence was produced to support the theory of the third party complaint that the Greyhound bus, in passing the Harshman vehicle had forced it from the highway into a snow bank and caused Mrs. Harshman to lose control.

As to Greyhound, the case was submitted to the jury on the theory that Greyhound had been negligent in operating the bus at an excessive speed. Clearly Greyhound did owe other travelers on the highway a duty to exercise reasonable caution and in operating its bus at an excessive speed it may have been negligent; certainly it was in violation of the speed limit. But Greyhound could be properly liable only with respect to those harms which proceeded from a risk or hazard the foreseeability of which rendered its conduct negligent. *Brusis v. Henkels,* 376 Pa. 226, 102 A. 2d 146 (1954) and *Dahlstrom v. Shrum,* 368 Pa. 423, 84 A. 2d 289 (1951). Thus, Greyhound's operation of a bus at excessive speed under these conditions created a

risk that the driver might lose control of his vehicle or be unable to stop within his assured clear distance and avoid any collision. In the present case, as it happened, these risks did not mature into harm. Similarly, Greyhound's negligent operation of its vehicle might have jeopardized another driver's control of his own vehicle. As noted above, the third party complaint averred such a chain of events, but there was no evidence to support this factual allegation. Other reasonably foreseeable risks might easily be imagined.[2] But in the case at hand, we cannot say that a collision occurring when the Greyhound bus was over one-half mile from the scene, and alleged to have resulted from the creation of a snow swirl (or the throwing of slush) was a harm within the risk foreseeably created by Greyhound's operation of its bus at an excessive speed. In addition, even if it were determined that Greyhound was negligent in raising a snow swirl, we would be obliged to conclude that it was not liable for the damages suffered by Metts. Perry's driver, while admitting that he was unable to see because of the snow swirl, nonetheless drove forward for an appreciable distance without attempting to decrease his speed. As noted above, the Perry bus was being operated without chains on the tires and without use of its sander. Perry's intervening negligence in view of the road conditions then

---

[2] "Thus the duty to exercise reasonable care in driving an automobile down the highway is established for the protection of the persons or property of others against all of the unreasonable possibilities of harm which may be expected to result from collisions with other vehicles, or with pedestrians, or from the drivers' own automobile leaving the highway, or from narrowly averted collisions or other accidents. When harm of a kind normally to be expected as a consequence of the negligent driving results from the realization of any one of these hazards, it is within the scope of the defendant's duty of protection." *Restatement (Second) of Torts*, §281, comment e (1965). Cf. *Marshall v. Nugent*, 222 F. 2d 604 (1st Cir. 1955).

prevailing was sufficiently extraordinary as to be a risk unforeseeable to Greyhound and to relieve Greyhound from liability. See *Restatement (Second) of Torts* §447.

In granting Greyhound's motion for judgment n.o.v., the court below stated that a snow swirl caused by one vehicle's passing another was a normal hazard of winter driving which for all practical purposes was unavoidable.[3] Appellants have cited no case, nor has our research uncovered any, in which defendant's alleged negligence as to plaintiffs has consisted in the creation of a snow swirl.[4] The situation at hand is perhaps analogous to one in which a driver blinded by the headlights of an approaching vehicle nonetheless proceeds without diminution of speed and collides with a car in front of it. Such accidents, and such cases, are numerous, but so far as we can determine it has not been argued that the approaching vehicle was negligent by virtue of the blinding effect of its headlights. Such an effect has always been considered a natural hazard of road travel, and the blinding effect of the instant snow swirl is in the same category.

In conclusion, we find that if Greyhound was negligent, its negligence lay only in exceeding the speed lim-

---

[3] There is no suggestion in the record before us that the snow flurry in the wake of the Greyhound bus was a result of its excessive speed, nor is there evidence that the snow cloud raised by a bus proceeding within the 50 m.p.h. speed limit would not have similarly interfered with the vision of other drivers using the highway.

[4] In *Dahlin v. Rice Truck Lines*, 137 Mont. 430, 352 P. 2d 801 (1960), the court considered a rear-end collision which resulted when the following driver's vision was impaired by a snow cloud raised by another vehicle. The issue in that case was whether the plaintiff (the following driver) was contributorily negligent in failing to stop while his vision was impaired, and there was no suggestion that the driver having raised the snow cloud was negligent by virtue of that fact.

it. The harm suffered by Metts, however, was not the result of a risk the foreseeability of which rendered Greyhound's excessive speed negligent. Rather that harm was attributable to Greyhound's nonnegligent raising of a snow swirl and the subsequent and unforeseeable negligence of Perry and Mrs. Harshman. On the facts of this case, we find no error in the grant of judgment n.o.v. in favor of Greyhound.

Judgment affirmed.

Mr. Chief Justice BELL concurs in the result.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The majority correctly notes that no case has been cited by the litigants holding a defendant liable in circumstances identical to the instant case. But then, no case has been cited holding that there was no liability. As Mr. Chief Justice STERN so ably stated: "While no case is reported in Pennsylvania with the same factual situation as that which gave rise to the present litigation, there is not involved here the application of any new doctrine in the law of negligence. Human life is so complex that the circumstances attending the happening of different accidents are correspondingly varied, but the principle which determines the imposition of liability is simple and constant, being based on the proposition that one who, by sub-standard conduct, causes injury to another is legally responsible therefore if the harmful consequences of such conduct could reasonably have been foreseen." *Hudson, Admrx., v. Grace*, 348 Pa. 175, 176-77, 34 A. 2d 498, 499-500 (1943).

I believe that it was for the jury to determine whether Greyhound's conduct was negligent and the risk of accident foreseeable. There was testimony to the effect that the Greyhound Bus passed the Perry Bus going "at least" 60 m.p.h., ten miles in excess of the posted

limit; that it had been snowing during the day; that the road conditions were "deplorable," the road being coated with a combination of freezing rain and snow; and that there was more snow in the passing lane than in the right-hand lane.* People at all familiar with high-speed driving know the danger involved in passing under such conditions, and know that the visibility of other drivers may be temporarily impaired by slush thrown onto their windshields by high-speed passing vehicles, especially by large buses. It is certainly foreseeable that when a driver's visibility is impaired by such conduct, even temporarily, a collision may occur. These are conclusions which reasonable men can draw from the present record and their common experience.

In my view the majority is incorrect in holding that reasonable men could not find this accident foreseeable, that this was not a question for the jury to decide. The majority forgets what Mr. Justice HOLMES said over fifty years ago: "It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye." *Munsey v. Webb*, 231 U.S. 150, 156, 34 S. Ct. 44, 45 (1913). See Restatement, Torts (2d) §281, illustration 2, at 5 (1965). I think the possibility of an accident was clear in the instant case. The jury so found. I would not disturb its conclusion, and I must therefore dissent.

---

* The majority notes in its statement of the facts that at the time the accident took place, the Greyhound Bus was out of sight and therefore at least one-half mile away. I fail to see the relevance of this fact. Certainly Greyhound's liability does not depend on how fast it was able to flee the scene. If it did, it would be rewarding the excessive speed which Greyhound's driver displayed.