## Mullin v. Gates et al.

C. Jewett Henry and Samuel H. Stewart, for plaintiff.

Charles E. Hower, for defendants.

FETTERHOOF, P. J., June 1, 1942.—Charles E. Mullin presented his petition to this court for a declaratory judgment under the Act of June 18, 1923, P. L. 840, as amended, 12 PS §831, setting forth that he has had in his employment at various times within the past three years Myrtle Stevens, Dorothy Gates, Fern Rutherford, Arlene Norris, and Emma Snyder in secretarial work, typing, filing, stenographic and incidental services in connection principally with correspondence and copying for him at his office, and that, although he was not in any manner whatsoever engaged in interstate commerce, the said employes, designated as defendants, have demanded that petitioner comply with the Fair Labor Standards Act of June 25, 1938, 52 Stat. at L. 1060, and that petitioner has been threatened with prosecution under said act by "duly authorized representatives of the United States Government, Department of Labor", as shown by certain correspondence attached to and made part thereof.

The demand as made was for $808.01, for which petitioner maintains he is not liable since he is engaged in the profession or occupation of a consulting chemist and not interstate commerce.

To this petition we granted a rule upon defendants which was duly served by the sheriff upon each of them. Myrtle Stevens, for herself and for Dorothy Gates and Fern Rutherford, filed an answer, which in effect alleges that petitioner was engaged in interstate commerce as defined by Act of Congress approved June 25, 1938, known as the "Fair Labor Standards Act of 1938", which act petitioner violated and is liable to them. On October 27, 1941, after a hearing and argument upon petition and answer, we decreed that this court has jurisdiction of the matter set forth in the petition, and set a time for the taking of testimony directing that personal notice of the decree setting forth the time and place of hearing be served personally upon Arlene Norris and Emma Snyder, who had

no attorney to appear for them. A copy of this decree was duly served upon the aforementioned persons. At the time of the taking of the testimony, of which all parties in interest had due notice, Dorothy Gates, Arlene Norris, and Emma Snyder did not appear in court, nor answer when their names were called by the court crier, and the said Dorothy Gates made known to this court that she did not want to appear or take any interest in this case whatsoever. These parties being in default no further consideration will be given their alleged claims.

The said act provides penalties for the violations of its provisions and under section 16(*b*) provides for the recovery of the unpaid minimum wages, or unpaid overtime compensation, and the "action to recover such liability may be maintained in any court of competent jurisdiction." Defendants here seek to recover moneys alleged to be due them under said act; this court, therefore, has jurisdiction.

As to this proceeding under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended, upon reviewing the petition and answer, there is no question but what "an actual controversy" has arisen or "the ripening seeds of one" exist; defendants set up a claim against petitioner and threaten the bringing of a suit for moneys allegedly due them: Capital Bank & Trust Company's Petition, 336 Pa. 108.

Charles E. Mullin resides in Huntingdon, Pa., is a chemist by profession who for several years has purchased considerable real estate in and about Huntingdon, and now owns about fifty or sixty properties which he rents. He also sells building supplies, does considerable plumbing, sells wallpaper, paints, and electrical supplies. As a consulting chemist he has had very little work, especially since 1938.

Myrtle Stevens testified she began working for petitioner August 30, 1935, and continued in his employment until December 16, 1940; that since August 24,

1938, she multigraphed letters and sent them out to clients of petitioner, which were taken from a mailing list of about 900 names throughout the United States, Canada, and England; that petitioner subscribed to certain chemical magazines, journals, and periodicals dealing with chemical subjects, and she copied and indexed abstracts of information upon these subjects, and mailed them to persons who might be interested. For this service he received $2.50 per copy per week, some of which were sent by mail, the usual postage being 9 cents per copy, and some by express. There were about twenty to twenty-five letters per week mailed out to subscribers to this service, which took almost all her time. Some went to clients within the State of Pennsylvania and some without.

Mrs. Fern Rutherford began to work for petitioner in March 1936, and was discharged May 19, 1940. She testified she indexed abstracts and did hectographing and correcting which took up practically all of her time. Petitioner had 20 to 25 clients who received abstracts on different chemical subjects. She does not remember many firms to which the abstracts were sent, none in Canada, but some in Pennsylvania. She did not know what the abstracts were used for and she did not work overtime. From her testimony we get very little, if any, information which would aid us in determining whether or not petitioner was engaged in interstate commerce from the work she did.

Petitioner testified that Myrtle Stevens and Mrs. Fern Rutherford copied and indexed certain chemical literature and patents and did whatever work was to be done in connection with the office. At times a number of copies were made of an abstract and since 1938 they were sent out by mail rather than by express, he receiving $2.50 per week for the service. When he was not there they received rent, and gave a receipt therefor. The material as copied was mailed out by first class mail to various persons who would be likely to be

interested, and he made no recommendations. He sent nothing to England during the last several years, and the check he received from Celanese Corporation of New York monthly was upon a contract he had with it in which he agreed not to work for their competitors. He had heretofore probably 12 clients, but now only about 10. The present business grew gradually in connection with his real estate. The girls were not held to any particular regularity in their employment and were told not to work more than 40 hours per week.

He testified the indexing was made of any material which he thought important in chemistry and some of the material was sent out. The indices had been made on a card system formerly, and later by sheets in a book by patent number or authors' name for his own use. His volume of business for 1938 as shown by his checking account was $31,364.32, and his gross income as so-called consulting chemist, about twelve to fourteen hundred dollars. In 1939 that income was about $1200, and in 1940, $789.89 to the time of the discontinuance of the service. From this gross income he had considerable expense of about $60 for postage, and $250 for subscriptions to magazines, papers, and other items.

We have given this matter serious thought and realize many complications may arise if the contention of defendants is sound. The expansion of this doctrine can reach such proportions that an attorney, if he furnishes an abstract of title to a property here in Huntingdon and mails it with the correspondence to an associate counsel in New York City, would be considered engaged in interstate commerce. We are not in sympathy with such construction, and feel this is the result of another bureaucratic autocracy in furtherance of centralization of power in Washington, which is gradually, but surely an encroachment of our Federal Government upon all the functions of our State Government.

We still believe in article X of the Constitution, despite the fact there are those who preach the doctrine that all power is in the United States Government, and the States only have and should have such powers as the Federal Government may choose to give them. Regardless of our own thoughts in this matter, it would appear by the Interpretative Bulletin No. 5, of the Administrator of the United States Department of Labor, Wage and Hour Division, sec. 6, that Charles E. Mullin would under the facts presented here be engaged in interstate commerce.

### Decree of Court

Now, June 1, 1942, it is ordered and decreed that this case be and is hereby certified for trial by a jury in which Fern Rutherford and Myrtle Stevens will be designated as plaintiffs, and Charles E. Mullin as defendant, to try the question as to how much, if any, wages may be due plaintiffs by defendant. Plaintiffs to file a statement of claim within 30 days from date hereof, and defendant to file his affidavit of defense in the regular course.