**Harleysville Mutual Insurance Co.
v. Philadelphia Transportation Co.**

*Joel P. Fishbein,* for petitioner.

*John P. Mason,* for respondent.

McDEVITT, P. J., June 26, 1968.—Harleysville Mutual Insurance Company (hereinafter "Harleysville") filed a petition for a declaratory judgment against the Philadelphia Transportation Company (hereinafter "PTC") and Anna Mae Rainer (hereinafter "Rainer"). The petition alleged that Rainer was a paying passenger on a PTC trolley and suffered personal injuries when the trolley collided with a vehicle operated by an uninsured motorist. Harleysville further alleged that it had issued an automobile insurance policy to Rainer, that the policy contained coverage for bodily injuries inflicted by uninsured motorists, that Rainer made a demand on Harleysville for such coverage, that Harleysville had refused to pay Rainer, and that Rainer had made a formal demand for arbitration before the American Arbitration Association, in accordance with the procedure provided in the policy. Harleysville also recited its demands upon PTC to take over Rainer's uninsured motorist claim, setting forth as the basis for these demands its own policy language concerning primary and secondary coverage and the fact that PTC is a self-insurer under the Public Utility Law. The ultimate legal basis of Harleysville's claim, set forth in its brief, is the Act of August 14, 1963, P. L. 909, sec. 1, 40 P.S. §2000, which provides that uninsured motorist coverage must be issued with all motor vehicle liability policies issued in this State unless specifically waived by the named insured in writing.

Upon the factual and legal bases outlined above, Harleysville asked this court to enter a declaratory judgment determining that:

1. PTC owes uninsured motorist coverage to its passenger, Anna Mae Rainer.

2. That the amount of the aforesaid coverage is $10,000.

3. That the aforesaid coverage is primary coverage and that the uninsured motorist coverage provided by the Harleysville policy is secondary coverage, which would apply only if the claim of Rainer were determined to exceed $10,000.

4. That Rainer has no claim against Harleysville for uninsured motorist coverage unless and until it is judicially determined that her claim exceeds $10,000.

Defendant PTC filed objections to jurisdiction. The matter came on for argument on February 5, 1968. On February 28, 1968, this court entered an order sustaining defendant PTC's objections and dismissing Harleysville's petition. Harleysville entered an appeal to the Supreme Court of Pennsylvania on March 12, 1968.

The Act of June 18, 1923, P. L. 840, as amended, 12 PS §831 and ff., sets out the law governing declaratory judgment actions. Section 1 of the act, 12 PS §831, states that "courts of record . . . *shall have power* to declare rights, status, and other legal relations whether or not further relief is or could be claimed. . . ." (Italics supplied.)

As though to leave no doubt concerning the discretionary nature of the remedy, section 6 of the act, 12 PS §836, is headed "Discretionary" and commences as follows:

"Relief by declaratory judgment or decree *may* be granted . . . where an actual controversy exists . . . or where the court is *satisfied* that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where . . . the court is *satisfied* that . . . a party asserts a legal relation, status, right, or privilege . . . and that there is a challenge or denial of such asserted relation, status, right or privilege by an adversary party . . . and the

court is *satisfied* also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding . . . " (Italics supplied.)

The interpretation of the Uniform Declaratory Judgments Act by the Supreme Court of Pennsylvania has tended to restrict the discretion of the lower courts in *assuming* jurisdiction over declaratory judgment proceedings.[1] Mains v. Fulton, 423 Pa. 520 (1966), summarized the principles to guide lower courts in determining whether or not a declaratory judgment proceeding should be entertained. These principles are:

1. A declaratory judgment proceeding is not an optional substitute for established and available remedies, whether statutory or not.

2. It should not be granted where a more appropriate remedy is available.

3. It should not be granted unless compelling and unusual circumstances exist.

4. It should not be granted where there is a dispute of facts or such controversy may arise.

5. It should not be granted unless there is a clear manifestation that the declaration sought will be a practical help in terminating the controversy.

On the other hand, the Supreme Court has been assiduous in upholding the discretionary powers of the lower courts in refusing to entertain declaratory judgment proceedings. The mere "fact that a cause of action is averred in the petition which is within the jurisdiction of the court . . . does not *require* the lower court to exercise its discretion. Likewise, the

---

1. See, for example, Kariher's Petition (No. 1), 284 Pa. 455 (1925); Capital Bank and Trust Company's Petition, 336 Pa. 108 (1939); Keystone Insurance Co. v. Warehousing and Equipment Corporation, 402 Pa. 318 (1960); McWilliams v. McCabe, 406 Pa. 644 (1962).

fact that an 'actual controversy exists,' or the fact that the objective essentials of a declaratory judgment proceeding exist does not require the lower court to assume jurisdiction": Reese v. Tomsic, 405 Pa. 380 (1961), at page 383.

In view of existing Pennsylvania case law, therefore, this court deems that a refusal to entertain jurisdiction of the present case would be well within its discretion. On the other hand, it well may be that we might abuse our discretion if we choose to entertain Harleysville's petition and to render a decision on the merits. There is no legal relationship between Harleysville and PTC, nor is there any inevitable controversy between them that will be forestalled by the court's taking jurisdiction of the instant proceedings. Indeed, the matter may well become moot if Harleysville prevails over Rainer in the pending arbitration proceedings.

We regard arbitration, as contemplated by the Harleysville-Rainer policy, as the more appropriate remedy in the present circumstances. The policy expressly provides that upon written demand of either party, the matter or matters upon which the insured and the company do not agree shall be settled by arbitration. Rainer has already invoked arbitration. Harleysville agreed to arbitrate and it should be required to abide by its agreement.[2] Harleysville con-

2. Compare National Grange Mutual Insurance Co. v. Kuhn, 428 Pa. 179 (1968), at page 185; "We believe that the policy language expresses the agreement of the parties to submit the 'matter or matters' in dispute between them, relative to the protection against uninsured motorists provision of the policy, to determination by arbitration. The arbitration clause in our view, indicates that the parties contemplated one method, and one method only, for the resolution of disputes under this coverage. That method was arbitration and all such disputes should be so decided." The provisions of the Harleysville-Rainer policy concerning arbitration under uninsured motorists coverage do not differ in any significant respect from the policy provisions involved in the National Grange case.

cedes that any other resolution of this petition would result in further delay which would be prejudicial to Rainer.

Further, if Harleysville's theory were correct, this court could not hear or decide how much Rainer's claim is worth. Nor could this court compel PTC to pay Rainer anything, since Rainer makes no claim against PTC.

Even upon the assumption that Rainer should prevail over Harleysville in the pending arbitration proceedings, no inevitable harm would result therefrom to Harleysville. It would still be free to seek indemnity from PTC upon the same theory that it has advanced in this proceeding. It is the very fact that Harleysville may again advance its theory that prompts this court to set forth the following grounds for its dismissal instead of relying on the safer course of refusing to entertain jurisdiction.

The insurance obligations of a common carrier to its passengers are matters which the legislature has placed primarily in the hands of the Public Utility Commission. Thus, the very section of the Public Utility Code which Harleysville cites as making the PTC a self-insurer (section 915, 66 PS §1355) expressly states:

"The commission may, as to motor carriers, prescribe, by regulation or order, such requirements as it may deem necessary for the protection of persons or property of their patrons and the public including the filing of surety bonds, the carrying of insurance, or the qualifications and conditions under which such carriers may act as self-insurers with respect to such matters: . . ."

Under the quoted section, the legislature has clearly delegated to the Public Utility Commission the power and authority to decide what insurance a motor carrier must provide. Harleysville has not cited any regulation or order by the Public Utility Commission which requires PTC to furnish the type of insur-

ance sought. We will not usurp the function of either the legislature or the Public Utility Commission by imposing upon PTC the duty of providing uninsured motorist coverage for its passengers.

The keystone of Harleysville's legal position is the Act of August 14, 1963, P. L. 909, 40 PS §2000. The act reads as follows:

"No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury . . . resulting therefrom: Provided, however, that the named insured shall have the right to reject such coverage in writing: . . ."

This section has absolutely no application whatever to PTC. First of all, PTC does not issue or deliver policies of insurance; it is a common carrier, not an insurance company. Secondly, the act pertains to motor vehicles; trolley cars do not come within the definition of motor vehicles as contained in The Vehicle Code.[3] Thirdly, the act, if it applied to PTC at all, would apply only if PTC had an insurance policy insuring itself against "loss resulting from liability imposed by law." If it had such a policy, which it does not, since it is a self-insurer, PTC would be the only "person insured thereunder" and would be the only one entitled to benefits under such policy.

3. 75 PS §102. A motor vehicle is defined as "Any vehicle . . . which is self-propelled, except . . . vehicles which move upon or are guided by a track . . ."

In sum, the simple fact is that the statute applies only to companies like Harleysville which issue liability policies. This action by Harleysville would seem to be an extreme example of an insurance company attempting to avoid a contractual liability to its assured or, in any event, to delay meeting its obligation until after it has first litigated its alleged claim against a third party. Rainer might well have to wait for years before obtaining the benefit of coverage Harleysville admits it owes.