## Stuchell v. Girard Trust Bank

*R. Stuart Jenkins*, for plaintiff.
*Jack C. Briscoe*, for defendant.
*Thelma McC. Zearfoss*, for guardian ad litem.

ECKELL, *J.*, December 22, 1977—Plaintiff is the coexecutor under the will of her deceased husband, H. Ernest Stuchell, Jr. She is also cotrustee under a certain life insurance trust created by her said husband.

Defendant, Girard Trust Bank, is the other coexecutor and cotrustee of the said H. Ernest Stuchell, Jr.

Among the assets of decedent were a 65 percent interest in a closed corporation known as L. D. Lowery, Inc. and a 62 percent interest in a closed corporation known as Lowery Associates Company.

Both companies had "buy-sell" contracts in existence at the time of the death of decedent. Those contracts provided for the valuation of the stock at time of death and the mode of payment for said stock.

Plaintiff brings this action of declaratory judgment to have this court determine whether or not life insurance proceeds on the life of her husband which policies were owned by the corporation and which proceeds were payable to the corporation, are to be included in the determination of the value of decedent's stock in said corporations.

If said insurance proceeds are to be considered in valuing the corporate stock, then approximately $90,000 in additional moneys will be paid over to the estate.

Strangely enough, plaintiff has taken the position that the insurance proceeds should not be so considered, since, in her opinion, her husband intended to benefit the remaining shareholders of the respective companies for their loyalty over the years. The coexecutor and cotrustee against whom plaintiff has brought this action has not taken any position with regard to the valuation question.

The corporations involved, L. D. Lowery, Inc. and Lowery Associates Company, while not parties to this proceeding, were present in court through their president who indicated that the corporations would be bound by the court's decision. No evidence was presented as to the corporations' position, however.

Finally, a guardian ad litem was appointed by the court to represent the interest of remaindermen, both determined and undetermined, under the life insurance trust of decedent. The guardian ad litem was present at the hearing and took the position that the insurance proceeds should be considered in valuing the corporate stock interests.

Section 836 of the Uniform Declaratory Judgments Act of June 18, 1923, P.L. 840, as amended, 12 P.S. §836, provides the requirements for declaratory judgments. The requirements include the existence of an actual controversy between contending parties, and the court's satisfaction that antagonistic claims are present between said parties.

Initially, it should be noted that the only parties before the court are the coexecutors and trustees of decedent's estate. While an order of the court would be binding on them, it certainly would not bind either of the corporations which are the entities from whom moneys will be paid to the estate. Further, the court is concerned that, except for the position of the guardian ad litem, no antagonistic claims would appear to exist between the two coexecutors and trustees and the corporations. On the other hand, while an actual controversy might not be present, the ripening seeds of one would be sufficient for the grant of relief. See Capital Bank and Trust Company's Petition, 336 Pa. 108, 6 A. 2d 790 (1939).

In Yoffe Estate, 7 D. & C. 2d 638 (1956), the court considered a petition by an executor of an estate for determination as to whether he should liquidate the estate and commence action against an individual who owed decedent money. The executor was on the horns of a dilemma resulting

from conflicting desires of parties. The widow of decedent wished him to take one action, certain heirs another action.

The court, finding that it had jurisdiction, stated that while no actual controversy had come into being, the ripening seeds of controversy were present, warranting judicial intervention.

In the case before us, the corporate executor particularly is on the horns of a dilemma. If it accepts the lower valuation favored by the wife of decedent (and its coexecutor), it would subject itself to possible litigation and surcharge action brought by the remaindermen. On the other hand, by accepting the higher valuation, it flies in the face of the wishes of its coexecutor. Because of this factor, we assume jurisdiction. While our order might have no legal effect on the corporations involved, it will be sufficient to direct the executors.

Plaintiff in this matter has raised a two-fold argument in support of her contention that the life insurance proceeds payable to the corporations involved should not be considered in valuing the stock held by her husband. The first argument is that since the agreement itself is not clear, parol evidence should be allowed to set forth the intent of the parties. The court did allow plaintiff, Phyllis Stuchell, wife of the deceased, to so testify as to intent. Mrs. Stuchell testified that it was her husband's intention that the insurance funds should not be used in valuing the stock. She indicated that her husband maintained a good relationship with his employes and would have wanted to favor them by not causing the serious drain to the corporations involved due to the payout of the additional funds.

In reviewing Mrs. Stuchell's testimony, the court finds it difficult to accept that such specific, techni-

cal conversations took place as related by the witness. Further, the court cannot accept the position that it was decedent's intention to benefit his employes to the detriment of his family and other heirs. Such a conclusion is not reasonably logical.

Finally, there are four other signatories to the buy-sell agreements, none of whom were called to testify nor was their absence explained. Testimony as to the intent of the parties with regard to the question of valuation and the use of the insurance proceeds would have been most significant if it came from the lips of these particular individuals.

The second argument raised by plaintiff is that if the parties to the buy-sell agreement had stipulated to the value of the stock, then the proceeds of the life insurance would not have been considered in their determination of value. The court finds this argument without merit. There is nothing to prevent the parties from agreeing to consider life insurance proceeds in evaluating the amount to be paid for corporate stock upon the death of one of the shareholders. The agreement indicates that there is life insurance on all the individuals involved.

If plaintiff's argument is based on the fact that a valuation figure which would cover both life and death situations would not include the life insurance proceeds since they would not have been in existence for a lifetime buy-out, this, too, is without merit. In place of the life insurance proceeds were cash surrender values of the life insurance policies in question which were very real assets of the corporations which definitely would have been considered in valuing the stock pursuant to a lifetime buy-out provision in the event of a shareholder's withdrawal from the corporation.

In any event, the court does not find this argu-

ment persuasive on the issue as to whether or not the life insurance proceeds should be considered in valuing the stock in question.

In considering the authority presented, it should be noted that plaintiff has cited none in support of her contention. On the other hand, the guardian ad litem has cited two cases for review by the court. In Land & Simmons Co. v. Arconti, 223 Md. 204, 162 A. 2d 478 (1960), the Maryland Court of Appeals affirmed the declaratory relief granted to the executors of an estate of a deceased stockholder compelling a corporation to include in its assets, in determining the book value of the deceased partner's share, the proceeds of certain life insurance policies on his life owned by the corporation.

In that case, the stock purchase agreement provided that the purchase price was to be " 'an amount equal to the book value thereof, determined in accordance with accepted accounting practices . . .' ": page 208. The record indicated that there were life insurance proceeds on the deceased shareholder's life which were paid to the corporation. The issue was whether the proceeds should be included. At trial, the corporation argued that although the proceeds were an asset of the corporation, an off-setting entry should be made for an amount equal to the proceeds as a reserve for acquisition of the stock from the deceased shareholder's estate.

The accountant testifying for the executor stated that it was not proper to offset the liability to purchase the stock as a deduction. The court, as indicated, ruled in favor of the executors. The following quote from 2 O'Neal, Close Corporations §7.26, p. 108, appeared in the court's opinion:

"Whenever a corporation, in order to fund a

stock-purchase agreement, takes out insurance on the lives of its shareholders and pays the premiums on the policies, each shareholder of course indirectly pays part of the cost of the insurance on the lives of his fellow shareholders. Unless the value of the insurance is taken into consideration in fixing the valuation to be placed on a decedent's interest, the result of the stock-purchase arrangement is to transfer his interest to the survivors at considerably less than its full value."

It is noteworthy that the court in its analysis stated that it did not seem likely that decedent "intended that an asset paid for by the company and constituting about 1/3 of its net worth, should inure to the benefit of his surviving associates rather than his estate."

In the case of Block v. Mylish, 351 Pa. 611, 41 A. 2d 731 (1945), a declaratory judgment action was brought to settle a controversy between surviving partners. Proceeds of insurance were carried on the life of a deceased partner by the firm. The trial court held that in determining the value of the partnership business as affecting the amount which the surviving partners should pay for the deceased partner's interest under an option agreement, the net proceeds payable on matured policies on a deceased partner's life (not merely the cash surrender value thereof) should be included. In the Block case, there is no mention in the agreement as to whether or not the life insurance proceeds were to be used in the evaluation of the interest of the deceased partner.

We find the above authorities persuasive. In considering the situation, there can be no doubt but that if a shareholder wished to withdraw from the corporation during his lifetime, then an accountant in determining value would take into consideration

the cash surrender value of the life insurance policies. This is supported by the fact that there was no right in such a withdrawing stockholder to purchase his own life insurance. These policies would remain as an asset of the corporation.*

This being so, why shouldn't the proceeds of such life insurance proceeds similarly be included?

The court is also persuaded by the use of the term "value" in the agreement as opposed to "book value." Certainly, book value is a narrower term which would exclude good will. While the parties have construed the term "value" as consistent with "book value," the court finds that the term is indicative of the parties' intent that a broader interpretation be given to valuing the stock interest and is consistent with the court's holding that the life insurance proceeds be considered in valuation of the stock interest.

In view of the following, we hereby order as follows:

## ORDER

And now, December 22, 1977, it is hereby ordered and decreed that Phyllis B. Stuchell and The Girard Trust Bank, coexecutors and cotrustees under the will of the late H. Ernest Stuchell, Jr., sell the stock interest of the late H. Ernest Stuchell, Jr. in L. D. Lowery, Inc., and Lowery Associates Company, to the respective corporations for the value of $786.94 per share for the L. D. Lowery, Inc. stock and $744.14 per share in the case of the Lowery Associates Company stock.

*This is supported by paragraph 11 of the agreement before us which gives stockholders the right to purchase a policy on his life from the corporation in situations where the agreement terminates in accordance with paragraph 10. No similar right is given in the withdrawal situation.