## Brim v. Wertz

*Kent Mikus,* for plaintiff.
*John Stengel,* for defendant Ressel.
*George Eager,* for defendant Wertz.

PEREZOUS, *J.,* September 18, 1996—Before us for disposition is the motion for summary judgment of defendant Mark A. Ressel in the action of plaintiff Eleanor S. Brim for personal injury damages suffered in a head-

on collision with a vehicle driven by co-defendant Jason D. Wertz. As in many such cases involving tragic multi-vehicular injury, it is human nature to point the finger of blame at those most closely connected in time or space with the accident. However, this case illustrates that mere temporal or geographical proximity do not a causal connection make.[1] Summary judgment will be granted Mr. Ressel.

## LEGAL STANDARDS

Indisputably, Mr. Ressel was in the proverbial "wrong place at the wrong time" on October 31, 1994. Mrs. Brim argues that this co-defendant should be held responsible for the manner in which he arrived at that place and time, but provides no binding authority to hold Mr. Ressel liable. Not named as a defendant in the action originally filed, Mr. Ressel was added after Mrs. Brim deposed him, Mr. Wertz, and witnesses. Mr. Wertz has provided no briefing on this issue.[2] As mere *but for* causation does not equate proximate or legal causation in this Commonwealth, the motion will be granted and judgment entered dismissing defendant Ressel from this action.

Our Supreme Court has traditionally stated the standard applicable to this ruling as follows:

"Summary judgment is granted properly when the pleadings, depositions, answers to interrogatories, and

---

1. We address in due course the factual allegations that there was competitive interaction between co-defendants on the Harrisburg Pike in the period preceding the accident *and* that one or both may have broken the posted speed limit.

2. Although Wertz stands to gain in some sense if Ressel is seen to have complicity in plaintiff's injury, it is understandable that he might prefer to await the outcome of this motion before detailing his theory of defense.

admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. 1035(b). Summary judgment is appropriate only in those cases which are clear and free from doubt. *Musser v. Vilsmeier Auction Co. Inc.*, 522 Pa. 367, 370, 562 A.2d 279, 280 (1989). The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Marks v. Tasman*, 527 Pa. 132, 135, 589 A.2d 205, 206 (1991)." *McConnaughey v. Building Components Inc.*, 536 Pa. 95, 98, 637 A.2d 1331, 1333 (1994).

While the version of Rule of Civil Procedure 1035 construed in that case has been superseded by amendments to Rule 1035 which became effective for motions filed from July 1, 1996, we are not without guidance on the effect of the new standard. Telegraphing its view of the coordination of the former and the amended summary judgment rules, our Supreme Court has stated a willingness to view the changes in terms of the federal summary judgment standard which our amended rule tracks.

"Among other changes, the new Rule 1035 states that a party may move for summary judgment where 'an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.' Pa.R.C.P. no. 1035.2." *Ertel v. Patriot-News Co.*, 544 Pa. 93, 101 n.3, 674 A.2d 1038, 1042 n.3 (1996).

Even before the effective date of the new language, the court found this new provision to comprise the "no genuine issue of material fact" standard of Rule 1035:

"Thus, we hold that a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. *Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.* at 101-102, 674 A.2d at 1042. (emphasis added)

Even the strictest possible construction of the new summary judgment standard[3] cannot avoid the conclusion that moving defendant is entitled to summary judgment where plaintiff has not carried her burden of producing evidence of facts essential to impose liability upon him.

## FACTUAL RECORD

We note the parties' basic agreement as to the following facts and circumstances.

(1) On October 31, 1994, plaintiff was injured in a head-on collision between her car and one driven by defendant Wertz.

(2) Wertz acknowledges that he is responsible for the accident.

(3) Defendant Ressel's car did not collide with either of the other two vehicles.

(4) Wertz had just passed Ressel in a no-passing zone by accelerating and crossing into the opposing lane.

---

3. The court takes judicial notice that the essence of Pa.R.C.P. 1035 has been retained in the revised rule bearing numbers 1035.1—1035.5. To the extent new language appears, we view the changes, many of which adopt accepted practice in this area, as a clarification. *Ertel* shows our Supreme Court agrees.

(5) While Wertz was speeding, Ressel was well under the speed limit on McGovernville Rd.

(6) The collision occurred in plaintiff's lane of travel, the southbound lane of McGovernville Rd., about 0.4 mile north of the Harrisburg Pike intersection.

(7) The collision site was just north of Colonial Crest Dr., the entrance road to the Town & Country Apartments where Ressel resided.

(8) Between the Harrisburg Pike and the collision site, northbound McGovernville Rd. is posted and marked as a no-passing zone.

(9) Between Plaza Blvd. (Park City) and McGovernville Rd., Harrisburg Pike has two westbound lanes separated by a broken white line.

(10) Both defendants were probably speeding as Ressel passed Wertz in the left westbound lane before moving into the right lane and turning onto McGovernville Rd. ahead of Wertz.

## LEGAL ANALYSIS

The sole question before us concerns the legal significance of Ressel's pre-accident interaction with Wertz. More precisely, the pending issue is whether that behavior permits him as a matter of law to avoid liability for the ensuing Wertz-Brim collision. In summary judgment terms, if interpreting the evidence in the light most favorable to Brim reveals any remaining question of material fact, the answer is "no." However, if giving every benefit of the doubt to plaintiff leaves no legally cognizable ground for holding Ressel responsible, then he will be dismissed from the case and judgment entered in his favor. Under the *Ertel* gloss

on the new summary judgment rules, unless Brim adduces sufficient evidence on an essential issue on which she bears the burden of proof to enable a jury to return a verdict in her favor, Ressel is entitled to summary judgment as a matter of law. *Id.* at 102, 674 A.2d at 1042.

Ressel's conduct must be evaluated according to well-worn, if not crystal clear, principles to determine whether it created a sufficiently foreseeable risk to Brim to impose on Ressel a duty to her, the breach of which constitutes negligence. To do so entails an analysis of proximate cause. See *Sinn v. Burd,* 486 Pa. 146, 165, 404 A.2d 672, 682 (1979). As noted in the parties' briefs, our courts have struggled to articulate a proximate cause standard and, in essence, concluded that a case-by-case determination is inevitably necessary. Calling the endeavor "one fraught with circumlocution," *Mazzagatti v. Everingham by Everingham,* 512 Pa. 266, 274, 516 A.2d 672, 676 (1986), our Supreme Court cited one authority's view:

"It is quite possible to state every question which arises in connection with 'proximate cause' in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur?" *Id.* citing W.P. Keeton, *Prosser and Keeton on Torts* (5th ed. 1984) at 274.

That court noted its own earlier comment in *Niederman v. Brodsky,* 436 Pa. 401 403, 261 A.2d 84, 85 (1970), that "[t]he best statement of the rule is that a wrongdoer is responsible for the natural and proximate consequences of his misconduct." *Mazzagatti, supra* at 274, 516 A.2d at 676. Another 1970 case decided after *Niederman* provides some insight that the court's

struggles pointed it toward a heightened standard for finding proximate cause.

In *Metts v. Griglak,* 438 Pa. 392, 264 A.2d 684 (1970), the court affirmed, over the dissent of Justice Roberts who had published *Niederman* only several months before, a judgment n.o.v. based on a finding that the harm was not within the risk foreseeably created by defendant's conduct:

"[T]he case was submitted to the jury on the theory that Greyhound had been negligent in operating the bus at an excessive speed. Clearly Greyhound did owe other travelers on the highway a duty to exercise reasonable caution and in operating its bus at an excessive speed it may have been negligent; certainly it was in violation of the speed limit. But Greyhound could be properly liable only with respect to those harms which proceeded from a risk or hazard the foreseeability of which rendered its conduct negligent. . . . Thus, Greyhound's operation of a bus at excessive speeds under these conditions created a risk that the driver might lose control of his vehicle or be unable to stop within his assured clear distance and avoid any collision. In the present case, as it happened, these risks did not mature into harm. Similarly, Greyhound's negligent operation of its vehicle might have jeopardized another driver's control of his own vehicle. . . . [T]he third party complaint averred such a chain of events, but there was no evidence to support this factual allegation. . . . But in the case at hand, we cannot say that a collision occurring when the Greyhound bus was over one-half mile from the scene, . . . was a harm within the risk foreseeably created by Greyhound's operation of its bus at an excessive speed." *Id.* at 396-97, 264 A.2d at 687. (citation omitted) (footnote omitted)

Dissenting from this view of nonforeseeability, Justice Roberts focused on Greyhound's speeding and stated:

"I believe that it was for the jury to determine whether Greyhound's conduct was negligent and the risk of accident foreseeable." *Id.* at 399, 264 A.2d at 688.

He even repeated the point:

"In my view the majority is incorrect in holding that reasonable men could not find this accident foreseeable, that this was not a question for the jury to decide." *Id.* at 400, 264 A.2d at 689.

Our research, see *Mazzagatti, supra; Sinn v. Burd, supra;* see also, *Matos v. Rivera,* 436 Pa. Super. 509, 648 A.2d 337 (1994); *Novak v. Jeannette District Memorial Hospital,* 410 Pa. Super. 603, 600 A.2d 616 (1991), and *Caldwell v. PennDOT,* 120 Pa. Commw. 358, 548 A.2d 1284 (1988), indicates that the court has preferred the *Metts* view to the *Niederman* approach which it superseded, just as *Niederman's* zone of danger concept replaced the impact rule regulating tort recovery.

The most favorable interpretation of the instant facts for plaintiff finds Ressel speeding while racing Wertz on the Harrisburg Pike prior to pulling in front of him just before the intersection with McGovernville Rd. and turning right onto McGovernville Rd., thereby "throwing down the gauntlet" to Wertz and causing him to attempt the ill-fated, and illegal, re-pass which resulted in injuries to Brim. Even assuming arguendo that they were racing each other—which we are *not* at all willing to concede the evidence reflects *except* under the summary judgment presumption favoring the party moved against—plaintiff has not cited and we have not found any controlling authority that the taint of such vehicular violation either infects Ressel's subsequent lawful driving or somehow binds him to and

makes him liable for Wertz's future erratic, injury-caus-
ing behavior. As indicated at the outset and elaborated
below, we hold the connection between Brim and Ressel,
on the one hand, and between Wertz and Ressel, on
the other hand, too attenuated to find that Ressel's racing
of Wertz on Harrisburg Pike violated a duty of care
owed Brim, which violation continued after defendants
turned onto McGovernville Rd. and makes Ressel liable
for Wertz's subsequent dangerous driving.

The operative issue is whether Ressel proximately
caused any harm to Brim, *not* merely whether Ressel
owed other drivers, including her, a duty of care. Since
it is axiomatic that drivers owe each other a duty of
care,[4] the latter issue begs the question of what proximity
or nexus must exist to hold Ressel liable.[5] Reasoning
backward, it is possible to say that Ressel owed no
legal duty of care specifically to Brim *not* to have been
speeding prior to turning onto McGovernville because
he cannot have been the legal cause of harm inflicted
by her collision with Wertz. However, it is more useful
to reason forward and say that where Brim was not
even in the picture when whatever race there may have
been terminated at McGovernville Rd., it is inconceiv-
able that Ressel could be the legal cause of Brim's

---

4. "We presently adhere to the view in this Commonwealth that
the driver of a vehicle owes a duty of care to all motorists and
pedestrians in his immediate zone of danger . . . ." *Mazzagatti,*
*supra* at 279, 516 A.2d at 679.

5. It has been observed that all events on Earth are so interrelated
that "a butterfly's wingbeat in the Amazon can spawn a hurricane
in the Caribbean." However, between the hugely attenuated connection
between the butterfly's liability and the direct connection of someone
who directly impacts another as the final physical cause of harm,
there exists a level of intermediate causation which our law recognizes
as a *legal* cause, nonetheless.

injuries. This court is unwilling to impose on Ressel a continuing duty to all passersby, subject to injury by Wertz merely because of some competitive spark he might have ignited in Wertz.

In holding that Ressel is not legally responsible for Wertz's conduct, we agree with Chief Justice Nix in *Mazzagatti* that "at some point along the causal chain, the passage of time and the span of distance mandate a cut-off point for liability." *Id.* at 273, 516 A.2d at 676. The race ended, defendants slowed to turn right, and Ressel removed himself from the episode by obeying the posted speed limit. In actuality, he was preparing to exit the scene entirely by turning left into his apartment complex. Wertz's subsequent speeding, unlawful lane change, and illegal pass are intervening, superseding causes, the consequences of which may not, therefore, be attributed to Ressel.[6]

Finally, we are not unaware of the "substantial factor" approach to causation analysis which purports to replace traditional proximate cause analysis with a concept of "legal cause" unfettered by foreseeability concerns. See *Vattimo v. Lower Bucks Hospital Inc.,* 502 Pa. 241, 465 A.2d 1231 (1983), quoting the Restatement (Second) of Torts and *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111 (1977). To the extent our foregoing analysis under the post-*Vattimo* approach in *Mazzagatti* may leave the matter in doubt,[7] we find that Ressel's conduct was not a substantial factor in bringing about Brim's

---

6. Had the same accident occurred while Wertz and Ressel jockeyed for position on Harrisburg Pike, with Wertz having a head-on collision and Ressel unscathed, our analysis would be hard-pressed to find a similarly complete severance of causal connection.

7. We also take judicial notice that, as plaintiff has neither argued nor briefed the issue of substantial factor, it is deemed waived. We address it here for the sake of completeness.

injuries and, therefore, was not a legal cause of those injuries; as that analysis does not rely upon foreseeability in the first place, it applies equally in the substantial factor context.

Although not exhaustive, the following Restatement sections contain the most relevant material about substantial factor:

"Section 430. Necessity of adequate causal relation

"In order that a negligent actor shall be liable for another's harm, it is necessary not only that the actor's conduct be negligent toward the other, but also that the negligence of the actor be a legal cause of the other's harm.

"Section 431. What constitutes legal cause

"The actor's negligent conduct is a legal cause of harm to another if

"(a) his conduct is a substantial factor in bringing about the harm, and

"(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

"Section 433. Considerations important in determining whether negligent conduct is substantial factor in producing harm

"The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:

"(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

"(b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created

a situation harmless unless acted upon by other forces for which the actor is not responsible;

"(c) lapse of time."

Under the Restatement, as in current case law regarding the issue, of proximate cause, cf. *Novak, supra,* it is for the court to determine whether the evidence is sufficient for reasonable minds to differ as to whether defendant's conduct was a substantial factor [section 434].

The thrust of the Restatement is to exclude foreseeability from causation analysis [section 435(1)]. However, although it has become accepted practice to pay lip service to the *substantial factor* standard in tort cases, foreseeability still enjoys a favored place in causation analysis, while the terms *proximate cause* and *legal cause* continue to be used interchangeably. Even viewing the evidence in the light most favorable to plaintiff, that evidence is insufficient to go to a jury on either the issue of proximate cause or of substantial factor.

For the foregoing reasons, upon consideration of all pleadings and papers relevant to defendant's motion and plaintiff's opposition thereto, the court enters the following:

## ORDER

Defendant Mark Ressel's motion for summary judgment is granted, and judgment entered in his favor, and against plaintiff Eleanor Brim, consistent with the foregoing opinion.